**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 11 |
| DALTON CRANE, L.C., | § | |
| | § | Case No. 21-33218 |
| Debtor. | § | |
| | § | |

**APPLICATION OF DEBTOR FOR ENTRY OF AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
OF TIGER CAPITAL GROUP, LLC AND GREAT AMERICAN GLOBAL PARTNERS,
INC. ("TIGER/GLOBAL") AS BROKER/AUCTIONEER**

**AN ORDER WILL BE ENTERED GRANTING THE RELIEF REQUESTED HEREIN WITHOUT FURTHER HEARING UNLESS A WRITTEN OBJECTION AND REQUEST FOR HEARING IS FILED WITH THE CLERK WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF THE ISSUANCE OF THIS NOTICE. ANY SUCH OBJECTION MUST ALSO BE SERVED UPON THE MOVING PARTY AND UPON ALL OTHER PERSONS INDICATED ON THE CERTIFICATE OF SERVICE ATTACHED TO THIS PLEADING.**

TO THE HONORABLE EDUARDO V. RODRIGUEZ
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Dalton Crane, L.C. ("Dalton" or "Debtor"), and hereby files this *Application of Debtor for Entry of an Order Authorizing the Employment and Retention of Tiger Capital Group, LLC and Great American Global Partners, Inc. ("Tiger/Global") as Broker/Auctioneer* (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), authorizing the Debtor to employ and retain Tiger/Global

as its broker/auctioneer,[1] pursuant to that certain Sale and Auction Agreement dated _____, a copy of which is attached to the Proposed Order as <u>Exhibit 1</u> (the "Engagement Letter"),[2] by and between Tiger/Global and the Debtor. In support of this Application, the Debtor relies upon the *Declaration of Mark P. Naughton, Senior General Counsel of Tiger Capital Group, LLC, and Declaration of Adam F. Alexander, CEO, Great American Global Partners, Inc.,* copies of which are attached hereto as **Exhibits B and C** (the "Naughton/Alexander Declarations"). In further support of this Application, the Debtor, by and through its undersigned counsel, respectfully represents as follows:

## JURISDICTION AND VENUE

1.This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtor consents to entry of a final order under Article III of the United States Constitution.

2.Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[1] Debtor is aware of the recent U.S. Supreme Court opinion in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Yali Acevedo Feliciano*, 589 U.S. \_\_, 2020 WL 871715 (Feb. 24, 2020) wherein the Court disapproved of orders granting *nunc pro tunc* relief in certain circumstances. In that case, the Court held that a District Court's *nunc pro tunc* order remanding a case back to state court cannot save orders entered by the state court during the interim period between the removal and entry of the order remanding the case back to state court. More specifically, the Court held that a District Court order cannot retroactively confer jurisdiction to a state court prior to the actual entry of an order remanding the case back down to state court. Further, the Court held that once a notice of removal is filed, "the State court shall proceed no further unless and until the case is remanded" and that the state court "los[es] all jurisdiction over the case, and being without jurisdiction, its subsequent proceedings and judgment [are] not . . . simply erroneous, but absolutely void." *Roman Catholic Archdiocese of San Juan, Puerto Rico*, 2020 WL 871715, at *3.

The Supreme Court's decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico* is easily distinguished from the facts of this case because this Court has never relinquished jurisdiction of the matters before it. Thus, the decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico*, should be narrowly construed to such circumstances dealing with the validity of a state court order entered after removal. Notwithstanding the above, and out of an abundance of caution, this Court may also grant the relief requested herein and enter any order pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Debtor submits that retention of Tiger/Global does not run afoul of the narrow circumstances detailed in *Roman Catholic Archdiocese of San Juan, Puerto Rico*.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-1.

## BACKGROUND

4. On October 1, 2021 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in this case. No trustee or examiner has been requested.

5. The factual background regarding the Debtor, including its business operations and the events leading to the filing of this bankruptcy, is set forth in detail in the *Declaration of Joshua Dalton in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [Dkt. No. 4] and fully incorporated herein by reference.

### A. Tiger/Global Qualifications

6. In light of the niche market in which the Debtor operates, Debtor requires a qualified and experienced Broker/Auctioneer regarding the turn key sale or auction with the resources, capabilities, and experience required to assist them in pursuing a reorganization or other transaction(s) that are crucial to the Debtor's success.

7. Tiger/Global are nationally recognized broker/auctioneers within the equipment industry with numerous transactions in the sector. Thus, Tiger/Global is one of the leading advisors to companies interested in sale of equipment assets within a turnkey or auction in the equipment industry. Tiger/Global and its professionals have been involved in some of the largest sales/auction transactions in the crane industry including: Tier One Energy Holding, Essex Crane, Ariel Access Equipment and Prime Equip.

8. The Debtor selected Tiger/Global as its broker/auctioneer based upon, among other things, the Debtor's need to retain an experienced firm in the auction/sale sector familiar with the market to help to conduct a sale process. Tiger/Global is thus well qualified and uniquely suited to deal effectively and efficiently with any financial issues that may arise during the pendency of this chapter 11 case. Dalton has reached out to numerous brokers/auctioneers and has negotiated terms of engagement with other brokers/auctioneers and has selected Tiger/Global following a review of other proposals, based on experience, location and the guarantee of auction proceeds and terms and conditions of engagement.

### B. Services to Be Performed

9. Subject to approval of the Court and consistent with the Engagement Letter, the Debtor has engaged Tiger/Global for the purpose of: (a) identifying parties who might be interested in entering into a Transaction[3] (b) assisting the Debtor in developing an information memorandum/data and strategic framework that shall be delivered to potential purchasers (the "Information Memorandum"); (c) formulating and recommending a strategy for potential Transactions (which may include assessment of the best operating option(s) for the Debtor in order to best maximize the saleability); (d) contacting and eliciting interest from potential parties to a Transaction; (e) conveying information desired by potential parties to a Transaction not contained in the Information Memorandum (the "Supplemental Information"); (f) reviewing and evaluating potential parties to a Transaction; (g) reviewing and analyzing

---

[3] The term "Transaction" shall mean (a) the acquisition, directly or indirectly, by a person or group (as such terms are defined in Section 13(d) of the Securities Exchange Act of 1934, as amended) in a single transaction or a series of transactions, of (i) all or a material portion of the assets or operations of the Debtor or (ii) fifty percent (50%) or more of new equity securities or the acquisition of existing equity securities of the Debtor or (b) any merger, consolidation, reorganization, recapitalization, equity issuance, business combination, joint venture, lease or other transaction, including any transaction pursuant to which either (i) the Debtor or any material portion of its assets or business are transferred to, acquired by or combined with, another party and/or (ii) the owners of the Debtor receive distributions or proceeds; and (c) any restructuring, reorganization, rescheduling, repayment, refinancing or recapitalization of all or any material portion of the liabilities of the Debtor, however such result is achieved, including, without limitation through a plan of reorganization (a "Plan") confirmed in connection with the Chapter 11 Case commenced by the Debtor under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code").

proposals regarding potential Transactions; and (h) to the extent requested by the Debtor, assisting with negotiations of the financial aspects of potential Transactions.[4]

10. The Debtor intends that Tiger/Global's services will complement, and not duplicate, the services to be rendered by other professionals retained by the Debtor. The Engagement Letter reflects Tiger/Global's understanding that the Debtor may retain other professionals during the term of the engagement, and the Debtor believe that, at their request, Tiger/Global will work cooperatively with any such professionals to integrate any respective work conducted by the professionals on behalf of the Debtor, if such a need arises.

### C. Terms of Retention

11. As more fully described in the Engagement Letter, the Debtor has agreed to, among other things, (i) compensate Tiger/Global for services rendered and reimburse Tiger/Global for expenses incurred; and (ii) fulfill certain indemnification and reimbursement obligations to Tiger/Global for liabilities, if any, arising out of or in connection with Tiger/Global's retention by the Debtor.

12. To the extent compliance is not waived or modified pursuant to the request made under Section 328(a) below, Tiger/Global intends to apply for compensation for professional services rendered and reimbursement of expenses incurred, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Tiger/Global's decision to advise and assist the Debtor is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be

---

[4] The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Engagement Letter, the Engagement Letter will control.

compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

13. Brokers and auctioneers including those focused on the equipment/crane sales, such as Tiger/Global, do not typically charge for their services on an hourly basis. Instead, they customarily charge a fee contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom and sets forth transaction based fees to be payable to Tiger/Global.

14. The compensation arrangements contained in the Engagement Letter are highly beneficial to the Debtor's estate because they provide certainty and proper inducement for Tiger/Global to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Debtor is seeking to retain Tiger/Global under Bankruptcy Code section 328(a), the Debtor believes that Tiger/Global's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and does not constitute a "bonus" or fee enhancement under applicable law.

### i. Prepetition Compensation

15. Tiger/Global was not retained and therefore did not receive any prepetition compensation from the Debtor. Tiger/Global, thus, has no claims against the Debtor on account of any fees or expenses that accrued prior to the Petition Date and, therefore, is not a creditor of the Debtor.

### ii. The Fee Structure

16. The fee structure detailed in the Engagement Letter provides for the following compensation:

   i. In the event of a Turnkey Sale – Tiger/Global would receive 7% sales commission on sales proceeds under $15 million, and 5% sales

        commission on sales proceeds over $15 million, and reimbursement of its actual expenses not to exceed $150,000.00. No buyer's premium or additional commission will be charged;

    ii.    In the event of an auction – Tiger/Global guarantees $13.5 million to the Debtor. Tiger/Global would receive the next proceeds of $300,000 above the guarantee. Any additional proceeds above $13,800,000 shall be divided ninety percent (90%) to the Debtor and ten percent (10%) to Tiger/Global. Tiger/Global also would charge all purchasers at auction and retain a buyer's premium equal to fifteen percent (15%) of the purchase price and such buyer's premium would not be treated as proceeds subject to the sharing set forth above.

17. In the event of a Turnkey Sale, in addition to any fees that may be payable to Tiger/Global and, in the event that no transactions or auction occurs, the Debtor shall promptly reimburse Tiger/Global for all actual and reasonable expenses up to $150,000 incurred by Tiger/Global (including travel-related expenses, research, database and similar information charges, postage, telecommunication, and duplication expenses) and the reasonable fees and expenses of counsel, if any, retained by Tiger/Global, without the need for such legal counsel to be retained as professionals in this chapter 11 case and without regard to whether such legal counsel's services satisfy Bankruptcy Code section 330(a)(3)(c).

18. Tiger/Global will maintain and provide to the Debtor records in support of any expenses incurred in connection with the rendering of its services in this chapter 11 case.

19. As Tiger/Global's compensation will be calculated and paid based on certain transaction fees, Tiger/Global respectfully requests that it not be required to file time records

in accordance with Bankruptcy Rule 2016(a), the United States Trustee Fee Guidelines, and any other applicable orders or procedures of the Court.

20. The Debtor believes that the Fee Structure is consistent with and typical of compensation arrangements entered into by Tiger/Global and other comparable firms in connection with the rendering of similar services under similar circumstances. Tiger/Global's strategic and financial expertise within this specialized industry as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtor during the term of Tiger/Global's engagement, were all important factors in determining the Fee Structure. The Debtor believes that the ultimate benefit of Tiger/Global's services cannot be measured by reference to the number of hours to be expended by Tiger/Global's professionals in the performance of such services. Indeed, the Debtor and Tiger/Global have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Tiger/Global and its professionals in connection with this chapter 11 case and in light of the fact that such commitment may foreclose other opportunities for Tiger/Global, and that the actual time and commitment required of Tiger/Global and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Tiger/Global.

21. In light of the foregoing and given the numerous issues that Tiger/Global may be required to address in the performance of its services hereunder, Tiger/Global's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Tiger/Global's services for engagements of this nature both in an out-of-court and chapter 11 context, the Debtor believes that the Fee Structure is fair, reasonable, and market-based under the standard set forth in Bankruptcy Code section 328(a).

### D. Indemnification

22. As part of the overall compensation payable to Tiger/Global under the terms of the Engagement Letter, the Debtor has agreed to indemnify Tiger/Global and the other Indemnified Parties in accordance with the provisions set forth in the Engagement Letter. The Engagement Letter provides, among other things, that the Debtor will indemnify Tiger/Global and other Indemnified Parties except to the extent that any loss, claim, damage, or liability is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

23. The indemnification, contribution, and reimbursement provisions reflected in the Engagement Letter are customary and reasonable terms of consideration for financial advisors such as Tiger/Global for proceedings both out of court and in chapter 11. The terms of the Engagement Letter were fully negotiated between the Debtor and Tiger/Global at arm's length, and the Debtor respectfully submits that the Engagement Letter is reasonable and is in the best interests of the Debtor, its estate, and stakeholders. Accordingly, the Debtor requests that the Court approve the Engagement Letter, subject to customary modifications set forth in the Debtor's proposed order.

### E. Tiger/Global's Disinterestedness

24. To the best of the Debtor's knowledge, and based upon the Naughton/Alexander Declarations, Tiger/Global is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b) and as required by Bankruptcy Code section 327(a), and does not hold or represent an interest materially adverse to the Debtor's estate with respect to the matters on which Tiger/Global will be employed.

**RELIEF REQUESTED**

25.     By this Application, the Debtor respectfully requests the entry of an order, substantially in the form of the Proposed Order, authorizing the Debtor to employ and retain Tiger/Global as their broker/auctioneer pursuant to the Engagement Letter.

**BASIS FOR RELIEF REQUESTED**

26.     The Debtor seeks approval of the Engagement Letter, including the Fee Structure contained therein, pursuant to Bankruptcy Code sections 327(a) and 328(a). Bankruptcy Code section 327(a) authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). As discussed above, Tiger/Global satisfies the disinterestedness standard of Bankruptcy Code section 327(a).

27.     In addition, the Debtor seeks approval of the Engagement Letter, including the Fee Structure set forth therein, pursuant to Bankruptcy Code section 328(a). Section 328(a) provides, in relevant part, that the Debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

28.     Bankruptcy Code section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court

> award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id*. at 862 (internal citations and emphasis omitted).

29. As set forth above, notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), Tiger/Global intends to apply for compensation for professional services rendered and reimbursement of expenses incurred, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived) and consistent with the Fee Structure set forth in the Engagement Letter.

30. The Debtor believes that the Fee Structure appropriately reflects the nature and scope of services to be provided by Tiger/Global in this case, Tiger/Global's substantial experience with respect to these types of services, and the fee structures typically utilized by Tiger/Global and other leading broker/auctioneers that do not bill their clients on an hourly basis.

31. In agreeing to seek Tiger/Global's retention under Bankruptcy Code section 328(a), the Debtor acknowledges the following: (i) it believes that Tiger/Global's general mergers and acquisitions and restructuring experience and expertise and its knowledge of the Debtor's operations will inure to the benefit of the Debtor in pursuing any Transaction(s); (ii) the value to the Debtor of Tiger/Global's services under the Engagement Letter derives in substantial part from that expertise and experience; (iii) accordingly, the structure and amount of the Transaction Fees are reasonable regardless of the number of hours to be expended by Tiger/Global's professionals in the performance of the services to be provided under the Engagement Letter; and (iv) the deferred fees should not be considered to be "bonuses" or fee enhancements under applicable law.

32. Indeed, similar fixed and contingency fee arrangements in other chapter 11 cases have been routinely approved and implemented. *See, e.g., In re Quicksilver Resources, Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Apr. 27, 2015) (approving a flexible fee structure and engagement letter under Bankruptcy Code section 328); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (approving a flexible fee structure and engagement letter under Bankruptcy Code section 328 on the grounds that both were reasonable); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. 2013 July 24, 2013) (same); *In re Exide Technologies, Inc.*, No. 13-11482 (KJC) (Bankr. D. Del. July 10, 2013) (same); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (same); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re WP Steel Venture, LLC*, No. 12-11661 (KJC) (Bankr. D. Del. July 3, 2012) (same).[5]

33. Moreover, the Debtor and Tiger/Global believe that the indemnification provisions set forth in the Engagement Letter are customary and reasonable for investment banking engagements, both out of court and in chapter 11 cases and reflect the qualifications and limitations on indemnification provisions. *See, e.g.*, *In re Quicksilver Resources, Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Apr. 27, 2015); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Cengage Learning, Inc.*, No. 13-44106 (CSS) (Bankr. E.D.N.Y. 2013 July 24, 2013); *In re Exide Technologies, Inc.*, No. 13-11482 (KJC) (Bankr. D. Del. July 10, 2013); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re WP Steel Venture, LLC*, No. 12-11661 (KJC) (Bankr. D. Del. July 3, 2012); *In re NewPage Corp.*, No. 11-12804 (AG) (Bankr. D. Del Sept. 7, 2011).

---

[5] Due to the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these orders are available upon request to the Debtor' proposed counsel.

34. The Debtor also believes that employment of Tiger/Global is warranted by the circumstances presented by this case. Absence of prejudice and "time pressure to begin service" are factors favoring *nunc pro tunc* retention. *See In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986).

35. In light of the foregoing, and given the numerous issues that Tiger/Global may be required to address in the performance of its services under the Engagement Letter, Tiger/Global's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Tiger/Global's services for engagement of this nature, the Debtor believes that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in Bankruptcy Code section 328(a).

## WAIVER OF BANKRUPTCY RULES

36. To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its businesses and preserve the value of its estate. The Debtor respectfully requests that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

37. Notice of this Motion shall be provided to: (a) the U.S. Trustee and any other party in interest who has filed a notice of appearance by the Court's CM/ECF system; (b) the 20 largest unsecured creditors, by U.S. mail ; and (c) all governmental agencies required to receive notice under the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules, by U.S. mail (collectively, the "Notice Parties").

38. The Debtor respectfully submits that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtor respectfully requests the entry of an order, substantially in the form of the Proposed Order, authorizing the Debtor to employ and retain Tiger/Global as their broker/auctioneer as of the Petition Date pursuant to the Engagement Letter.

Respectfully Submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas  78205
Telephone: (210) 227-7591
Facsimile:  (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

By:  /s/Michael G. Colvard
     Michael G. Colvard
     State Bar No. 04629200

**ATTORNEYS FOR DEBTOR,
DALTON CANE, L.C.**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing document has been mailed by U.S. First Class Mail to the parties listed on the attached service list on January 5, 2022.

/s/Michael G. Colvard
MICHAEL G. COLVARD